IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TAMORAH L.CHAPMAN )
1301 Kenmore Street )
Arlington, VA 22206 )
                 )     Civil Action No.
     Plaintiff, )
                 )
v. )
                 )
TIMOTHY GEITHNER, )
Secretary of the Treasury )
1500 Pennsylvania Avenue )
Washington, D.C. 20220 )
                 )
     Defendant. )

## COMPLAINT

Plaintiff, Tamorah L. Chapman, by and through her undersigned counsel, complains of

the Defendant as follows:

### JURISDICTION AND VENUE

1. This Court has federal jurisdiction and venue is proper because the Defendant is located

in this district and more than 180 days have passed since Plaintiff filed her five formal

EEO complaints of discrimination with the Defendant and less than 90 days have passed

since Plaintiff received the Department of Treasury Final Agency Decisions on four of

her formal EEO complaints of discrimination

### PARTIES

2. Plaintiff Tamorah L. Chapman is a resident of Arlington, Virginia.

3. On information and belief, Defendant, Timothy Geithner, Secretary of the Treasury, is named in his official capacity as Secretary of the Agency that employed Plaintiff within the U.S. Government.

## FACTS

4. This action is filed under Title VII of the Civil Rights Act of 1964.

5. Ms. Chapman is female.

6. Ms. Chapman was employed by the Department of Treasury as an Internal Revenue Agent, GS-512-13, with the Internal Revenue Service (IRS), Large and Mid-Size Business (LMSB), at the Baileys Crossroads, Virginia Post of Duty (POD).

7. Ms. Chapman began working for IRS in September 2002 as an Internal Revenue Agent, GS-9, SBSE, at the Baileys Crossroads, Virginia POD.

8. In 2002, Ms. Chapman participated in a group grievance and filed an informal EEO complaint. Defendant maintained information pertaining to Ms. Chapman's informal EEO complaint in her personnel file.

## EEO COMPLAINT 1:      EEODFS-07-0828-F

9. In July 2004, Ms. Chapman transferred to the Rochester, NY POD as an Internal Revenue Agent, GS-11 Small Business Self Employed (SBSE).

10. In March 2005, Ms. Chapman returned to the Baileys Crossroads, VA POD as a GS 12. She was promoted to GS 13 in March 2006.

11. Richard Guastello, LMSB Internal Revenue Agent Group Supervisor, became Ms. Chapman's supervisor on or about March 6, 2005.   After becoming Ms. Chapman's supervisor, Mr. Guastello received Ms. Chapman's internal Employee Performance Binders and her Drop File that contained information about her previously filed informal EEO complaint.

12. On January 13, 2006 Ms. Chapman voiced her concern to Mr. Guastello regarding written statements, agreements, and management decisions affecting Baileys Crossroad employees that she believed were discriminatory towards females.

13. On March 15, 2007, Ms. Chapman received her annual performance appraisal for the period February 1, 2006 through January 31, 2007.  The appraisal was not as high as it should have been because Mr. Guastello did not evaluate Ms. Chapman on all of the tasks assigned to her or evaluate her according to the Critical Job Elements applicable to her job, as required under the Agency's agreement with the National Treasury Employees Union (hereinafter "Union Contract").

14. As a result of Mr. Guastello's evaluation, Ms. Chapman did not receive a performance award or quality step increase.  In addition, she did not receive the same consideration as

3

other candidates when applying for vacancy announcement promotional positions for the period in which she had to use the performance appraisal when applying for positions-- February 2007 through February 2008.

15. Mr. Guastello's evaluations of Ms. Chapman's male coworkers included all tasks assigned and were prepared according to the Critical Job Elements applicable to Internal Revenue Agents.

16. In or about February 2007, Ms. Chapman applied for several lateral GS-12/13 and GS 13 LMSB Internal Revenue Agent positions at the Rochester, NY POD: vacancy announcements, IRA International Examiner 60-62-LMB70252 GS-13, 2 positions, and IRA Team Member 60-66-LMB70294 GS 12/13, 2 positions.

17. Ms. Chapman participated in an interview for the IRA International Examiner 60-62-LMB70252 positions on May 8, 2007. The members of the interview panel harassed Ms. Chapman by asking her irrelevant and inappropriate questions.

18. Ms. Chapman told Mr. Guastello about the way she was treated during the interview and informed him that she was going to file an EEO complaint.

19. On or about May 23, 2007, Ms. Chapman learned she was not selected for the IRA International Examiner positions. The agency selected a male candidate who was still serving a one-year probationary period, had no relevant work experience, and had been in

4

training status since his June 6, 2006 hire date.  The agency did not fill the second IRA
International position.

20. On or about June 5, 2007, Ms. Chapman learned that male agents were hired at higher
grades and step levels than Ms. Chapman even though her qualifications, experience
and/or education were superior to those of the male agents.

21. On or about June 25, 2007, Ms. Chapman learned that she was not selected for the IRA
Team Member positions even though she was already working and performing
successfully in the same position at the Baileys Crossroads POD.   The Defendant
selected a lower level (GS11) external male candidate with less relevant work experience,
less seniority, and no LMSB revenue agent work experience.   The agency did not fill the
second IRA Team Member position.

22. Beginning in or about June 2007 and continuing, Mr. Guastello denied Ms. Chapman the
opportunity to work on Coordinated Industry Cases (CIC) casework and only assigned
her Industry Case (IC) casework.  Mr. Guastello gave all of Ms. Chapman's male
coworkers CIC casework.  Ms. Chapman needed to be assigned CIC casework in order to
develop in her position as an LMSB IRA so that she could be promoted to a GS 14 Senior
Team Coordinator or Team Leader.  These positions are only given to Agents that have
experience working large CIC cases.

23. In July 2007, Mr. Guastello failed to conduct Ms. Chapman's midyear evaluation. Mr. Guastello conducted midyear evaluations for Ms. Chapman's male coworkers.

24. Ms. Chapman filed an EEO complaint regarding the events described in paragraphs 13-23. The agency issued a final agency decision on EEODFS-07-0828-F on or about April 19, 2010.

## EEO COMPLAINT 2:      IRS-08-0229-F

25. On or about December 4, 2007, Ms. Chapman learned that she was not selected for the position of Internal Revenue Agent Senior CEP Team Coordinator, GS-0512-14, Vacancy Announcement No. 60-66-LMB80337, in Rochester, NY. The agency selected two male candidates. One of the male candidates selected had less education and experience than Ms. Chapman.

26. On or about December 5, 2007, Mr. Guastello refused to provide Ms. Chapman with a promotional evaluation so that Ms. Chapman could use it to apply for a promotional vacancy announcement. Mr. Guastello was required to give Ms. Chapman a promotional evaluation under the Union Contract.

27. On or about January 9, 2008, Ms. Chapman learned that she was not selected for the position of Internal Revenue Agent International Examiner, GS-0512-14, Vacancy Announcement No. 60-66-LMB80348 in Rochester, NY. A male candidate was selected.

Ms. Chapman did not make the best qualified list for this position. She believes she did not make the best qualified list because Mr. Guastello refused to provide her with a promotional evaluation and because Defendant denied her the opportunity to gain experience as an International IRA at the GS 13 level.

28. On or about January 11, 2008 and on or about February 6, 2008, Mr. Guastello gave Ms. Chapman a case review recordation that did not recognize Ms. Chapman's accomplishments, attempted to minimize her work and made inaccurate and misleading statements about Ms. Chapman's work. Mr. Guastello gave accolades to Ms. Chapman's coworkers whose performance was below that of Ms. Chapman's.

29. On or about February 6, 2008, Ms. Chapman contacted the EEO Manager regarding the recordations because she believed Mr. Guastello was retaliating against her for her prior protected activity.

30. On or about February 12, 2008, Ms. Chapman learned that she was not selected for the position of IRS Coordinator, GS-0512-14, Vacancy Announcement No. 60-66-LMSB80506 in Rochester, NY. Ms. Chapman did not make the best qualified list for this position. Ms. Chapman believes she did not make the best qualified list in retaliation for her EEO activity, because she did not have CIC case work experience and because Mr. Guastello refused to provide her with a promotional evaluation.

31. On or about February 13, 2008, Ms. Chapman received a memorandum of counseling from the Acting Territory Manager, Tina Meaux. Ms. Chapman believes she received this memorandum of counseling because Ms. Chapman was documenting Mr. Guastello's discriminatory and retaliatory conduct.

32. On February 14, 2008 Ms. Chapman was denied the opportunity to work a detail/training despite her qualifications.

33. On or about February 15, 2008, Ms. Chapman received her annual performance appraisal. The appraisal was not as high as it should have been and was not prepared in accordance with the Critical Job Elements applicable to her job or in accordance with the Union Contract. Mr. Guastello failed to include in the evaluation one of the most significant and primary case work issues that Ms. Chapman worked on in 2007 as well as her work on other significant cases, even though Ms. Chapman specifically requested that these cases be reviewed and used for evaluative purposes in accordance with the Union Contract.

34. Ms. Chapman needed a rating of at least a 4.6 in order to receive a monetary Recognition Award and to make the Best Qualified eligible list for a promotion to a GS-14 Revenue Agent position. Mr. Guastello gave her a rating of 4.4. Mr. Guastello employees with less experience and seniority higher ratings even though Ms. Chapman's work was the

8

same or better.   Ms. Meaux approved Mr. Guastello's performance evaluation of Ms. Chapman.

35. On or about February 29, 2008, Ms. Chapman submitted a formal rebuttal to the performance appraisal explaining why her rating was discriminatory and retaliatory.  In accordance with the Union Contract, the rebuttal became a part of Ms. Chapman's official performance appraisal and was submitted to the ranking and selecting officials when Ms. Chapman applied for vacancy/promotional positions.

36. From February 2008 through June 2008, Mr. Guastello retaliated against Ms. Chapman for her protected activities by giving her directives in violation of established IRS examination policy and procedures.  In addition, he allowed an Appeals Officer to treat her in an unprofessional manner and refused to intervene when Ms. Chapman requested. He also made derogatory comments about her work to others.

37. Ms. Chapman filed an EEO complaint regarding the events described in paragraphs 25-36.  The agency issued a final agency decision on IRS-08-0229-F on or about March 30, 2010.

**EEO COMPLAINT 3:       IRS-08-0727-F**

38. On or about June 5, 2008, Ms. Chapman contacted Mr. Guastello's new supervisor, Leyman Dry, in order to report Mr. Guastello's continued unprofessional, disrespectful, retaliatory and discriminatory behavior towards her and also to request to be removed from the case that Mr. Guastello had repeatedly failed to acknowledge in her performance evaluation and recordations.

39. On or about June 6, 2008, Mr. Dry summoned Ms. Chapman to a meeting to discuss *Ms. Chapman's* performance and conduct issues. Mr. Dry did not respond to Ms. Chapman's complaints regarding Mr. Guastello. Mr. Dry refused to provide Ms. Chapman with an explanation of his allegations against her.

40. On or about June 11, 2008, Mr. Dry, reassigned Ms. Chapman to a new manager— Gerald T. Hicks. Mr. Hicks was located in Richmond, Virginia, outside the local commuting territory in which Ms. Chapman was located and performed her casework. Because Ms. Chapman remained in Baileys Crossroads, she was isolated from the other agents in her new group and no longer part of the group of revenue agents at Baileys Crossroads. In addition, Mr. Hicks did not have any advanced CIC casework to assign to Ms. Chapman due to his remote location. Mr. Dry could have assigned Ms. Chapman to another manager in the Baileys Crossroad POD or to one of three other managers locally in the Metropolitan Washington, D.C. area.

41. On or about June 12, 2008 Ms. Chapman communicated her concerns regarding CIC case
    work to Mr. Dry, Mr. Hicks and senior manager Mr. Inoue. She specifically
    communicated the fact that Mr. Hicks did not have any advanced CIC casework located
    in Ms. Chapman's local commuting area and the impact it would have on her
    development and advancement. Mr. Dry, Mr. Inoue and Mr. Hicks ignored Ms.
    Chapman's concerns.

42. On June 20, 2008 Mr. Dry sent Ms. Chapman an Alternative Disciplinary Action (ADA)
    letter stating that he was going to issue Ms. Chapman a formal Disciplinary Letter of
    Reprimand due to her failure to conduct herself in a professional manner in the workplace
    if she did not agree to enter into an ADA agreement whereby, she would have to
    acknowledge in writing that she was guilty of whatever wrongdoing he was accusing her
    of. Ms. Chapman again immediately responded that she was not aware of any
    misconduct and requested the information that Mr. Dry was relying on as well as an
    explanation from him. Mr. Dry did not respond to Ms. Chapman.

43. On or about June 20, 2008 and again on or about June 23, 2008, Mr. Hicks ordered Ms.
    Chapman to travel to Richmond, Virginia unnecessarily for meetings that could have
    been handled by telephone. In addition, Mr. Hicks refused to provide Ms. Chapman a
    travel advance for the trips as required by the Union Contract and GSA Federal Travel

Regulations. It took Ms. Chapman nearly six hours to travel back and forth to Richmond,

Virginia for a fifteen-minute meeting.  On or about June 20, 2008, Ms. Chapman reported

this behavior to Mr. Dry and Mr. Inoue and requested a transfer.  Neither Mr. Dry nor

Mr. Inoue responded.

44. From June 2008 through February 2009, Mr. Hicks placed Ms. Chapman under scrutiny,

micromanaged her, held her to higher and different standards than other agents,

questioned her work methods, gave her inaccurate and misleading directives that went

against established policies and procedures, refused to give her guidance related to work

matters and intentionally tried to provoke her into insubordination.

45. From on or about June 20, 2008 through September 2008, Mr. Hicks insisted that Ms.

Chapman obtain a government credit card even thought she did not meet the

requirements under the Agency's official travel policy.

46. On or about June 30, 2008, Mr. Guastello gave Ms. Chapman a departure rating that was

inconsistent with her performance and did not rate her according to the Critical Job

Elements associated with her job.

47. On or about August 4, 2008, Mr. Dry gave Ms. Chapman a formal disciplinary letter of

reprimand for failure to conduct herself in a professional manner but refused to provide

her with any details or information regarding the alleged misconduct when she requested

it. Mr. Hicks told Ms. Chapman that she was required to sign the letter. Ms. Chapman

signed the letter with a notation stating that she believed the letter of reprimand was for

filing an EEO complaint and that she had not been provided with the information the

agency relied on in issuing the reprimand.

48. On or about August 21, 2008, Mr. Hicks gave Ms. Chapman an evaluative case

recordation that was not consistent in form with what she received from her previous IRS

managers over the past 6 years. The recordation was confusing and negative and he used

criteria that differed from the agency established criteria outlined in the Critical Job

Elements applicable to her job. Ms. Chapman submitted a formal rebuttal to the

recordation on August 21, 2008.

49. On or about September 4, 2008 Mr. Hicks gave Ms. Chapman inappropriate directives

and instructions regarding one of her cases that were not consistent with what she had

done in the past. When she questioned him and asked for guidance he became hostile and

told her to "just do as she was told and not ask any questions." Ms. Chapman reported

Mr. Hicks' behavior to senior management, Bryan Inoue and Walter Harris, but received

no response.

50. On or about October 6, 2008, Mr. Hicks told Ms. Chapman that if she wanted to contact

an EEO counselor, she had to use her personal leave contrary to agency policy.

51. On or about October 15 and 16, 2008, Mr. Hicks required Ms. Chapman to attend a two-day meeting in Richmond, Virginia requiring overnight travel, even though she could have attended the same meeting in Baileys Crossroads with Revenue Agents in her post of duty or attended via phone or video conference as outlined in the Agency's Official Travel Policy. The meeting in Richmond, VA pertained to Revenue Agents working in Richmond and therefore had no applicability to Ms. Chapman's work in Northern Virginia.

52. On or about October 29, 2008, Mr. Hicks had a meeting with Ms. Chapman during which he accused her of falsifying her official time on her cases but refused to provide her with detailed information regarding this allegation when she requested it. In addition, he told her that she was not to use any administrative time without his permission and that if she did she would be considered AWOL (Absent Without Leave). Mr. Hicks' behavior towards Ms. Chapman during the meeting was extremely hostile and unprofessional.

53. On or about November 5, 2008, Ms. Chapman advised Bryan Inuoe, Feliciano Ramona, and Walter Harris that she feared for her safety as a result of the hostility and harassment she was forced to endure from Mr. Hicks. All three ignored her concerns and never once contacted her.

54. On November 19, 2008, Ms. Chapman received a "4502 Review/WLR" evaluative
recordation from Mr. Hicks. The evaluation was derogatory and negative, did not
accurately reflect Ms. Chapman's work performance, but instead appeared to be an
evaluation of Ms. Chapman's time spent on EEO matters. Mr. Hicks rated Ms. Chapman
as Fails (Zero) in areas that she has been rated as "exceeds" (Five) or "meets" (Four) for
the past five years under other IRS Supervisors and for which just four months ago was
given an "Exceeds" (Five) rating by Mr. Guastello. The recordation was not consistent
with past recordations given to Ms. Chapman by previous IRS Supervisors, was not an
accurate reflection of her work performance and was not based on the Critical Job
Elements applicable to her job. Ms. Chapman submitted an extensive formal rebuttal on
December 11, 2008 to both Mr. Dry and Mr. Hicks. Ms. Chapman also forwarded the
rebuttal and complained to senior managers Bryan Inuoe, Feliciano Ramona, and Walter
Harris.

55. From on or about June 2008 through February 4, 2009 Ms. Chapman repeatedly advised
senior managers Mr. Bryan Inuoe, Ms. Feliciano Ramona, and Mr. Walter Harris of the
constant retaliation and harassment from Mr. Hicks and Mr. Dry and they never
responded or took corrective action.

56. On or about November 19, 2008, Mr. Hicks refused to approve the travel voucher that
    Ms. Chapman submitted to him on November 12, 2008, pertaining to the overnight travel
    that Mr. Hicks required her to perform on October 15 and 16, even though he pre-
    approved and pre-authorized all of Ms. Chapman's expenses.

57. On November 24, 2008 Mr. Hicks issued Ms. Chapman a threatening memorandum
    stating that she was again falsifying her time and that if she continued to do so she would
    be considered AWOL.  In the letter Mr. Hicks referenced several dates in which Ms.
    Chapman had allegedly falsified her administrative time.  However, the dates that Mr.
    Hicks referenced did not correspond to the actual time Ms. Chapman had reported on her
    time sheets.

58. Between January 5, 2009 and February 17, 2009, Ms. Chapman learned that she was not
    selected for the following positions in Rochester, NY and Baileys Crossroads, VA:

    - IRA Senior CEP Team Coordinator, GS-14, Vacancy Announcement 09PH2-
      LMB0018-0512-14-TC-14 in Baileys Crossroad, VA and selected by Mr. Dry.

    - IRA Account Coordinator, GS-14 in Buffalo, NY, Vacancy Announcement No.
      09PH4-LMB0010-0512-14-LP-14;

    - IRA Team Leader, GS-14 in Baileys Crossroad, VA, Vacancy Announcement No.
      08PH4-LMB0352-0512-14-TS-14;

16

- IRA Senior CEP Team Coordinator, GS-14 in Baileys Crossroad, VA, Vacancy Announcement No. 08PH4-LMB0350-0512-014-TS-14;

- IRA Sr. CEP Team Coordinator, GS-14 in Rochester, NY, Vacancy Announcement No. 09PH4-LMB0261-0512-14-JC-IRA,

- IRA Sr. CEP Team Coordinator, GS-14 in Baileys Crossroad, VA, Vacancy Announcement No. 09PH4-LMB0259-0512-14-AP.

59. Between February 7, 2009 and February 17, 2009, Ms. Chapman became aware that she was not selected for the following lateral positions in the Rochester, NY and Baileys Crossroad Offices:

- IRA International Examiner, GS-13 in Baileys Crossroad , VA, Vacancy Announcement No. 60-62-1L90139;

- IRA International Examiner, GS-13 in Rochester, NY , Vacancy Announcement No. 60-66-1L90168;

- IRA Financial Products & Transactions Examiner, GS-13 in Rochester, NY , Vacancy Announcement No. 60-61-2L90123.

- IRA Team Member, GS-13 in Rochester, NY Vacancy Announcement No. 60-66-LMB90151

17

- IRA Team Member, GS-13 in Baileys Crossroad, VA, Vacancy Announcement No. 60-62-LMB90129, 2 positions.

60. On or about February 4, 2009, Mr. Hicks gave Ms. Chapman a recordation dated January 1, 2009 in which he wrongfully accused her of inappropriate behavior, did not rate Ms. Chapman in accordance with the critical job elements applicable to her job and did not accurately portray her case related work and performance.

61. On or about February 9, 2009, Ms. Chapman submitted a detailed written request to Mr. Dry and Mr. Hicks asking that they provide her with an explanation and detail regarding the recordation, performance ratings and inappropriate behavior allegations. Ms. Chapman also requested information and detail regarding the October 29, 2008 recordation given to her by Mr. Hicks. Mr. Dry and Mr. Hicks ignored her requests. Ms. Chapman submitted her requests again on February 18, 2009 and on February 20, 2009, Ms. Chapman prepared a detailed rebuttal to the recordation explaining why it was discriminatory and retaliatory and submitted it to Mr. Hicks, Mr. Dry, Mr. Ng and Ms. Helm on February 25, 2009.

62. On or about February 4, 2009, Ms. Chapman complained to the IRS Commissioners concerning Mr. Hicks' and Mr. Dry's continued retaliation and harassment and notified

them that senior managers Walter Harris, Bryan Inoue and Ramona Feliciano had been

ignoring her complaints and concerns since June 2008.

63. On or about February 5, 2009, Mr. Dry reassigned Ms. Chapman to another manager,

Donna Helm. Ms. Helm is located in Wheaton, MD and sits in the office next to Mr.

Dry. Because Ms. Chapman remained in Baileys Crossroads, she continued to be

isolated from the other agents in her group. In addition, Ms. Helm did not have any CIC

casework to assign to Ms. Chapman and did not control any large CIC cases in Northern

Virginia where Ms. Chapman was located. Mr. Dry could have assigned Ms. Chapman

to a manager in the Baileys Crossroad POD or another manager in the Washington, DC

metropolitan area that had CIC casework. As a result, Ms. Chapman was denied

development and advancement opportunities while all other LMSB RA and examiners

within his territory had the opportunity to develop and advance.

64. On February 5, 2009 Mr. Dry advised Ms. Chapman that the reassignment to Ms. Helm

was open-ended and not permanent which made Ms. Chapman fear that he was going to

transfer her back to Mr. Hicks.

65. On or about February 5, 2009, Mr. Dry advised Ms. Chapman that Mr. Hicks would

prepare her annual evaluation even though Mr. Dry was aware of the negative and

egregious retaliatory and discriminatory recordations Mr. Hicks had given Ms. Chapman without discussing them with her or responding to her requests for information.

66. On or about February 12, 2009, Ms. Helm and Mr. Dry wrongfully accused Ms. Chapman of renting a car on October 17, 2008 for personal use and charging the cost to her government credit card.

67. On or about, February 17, 2009, Ms. Chapman received an annual performance appraisal rating for the period ending January 31, 2009. The evaluation was signed by Mr. Hicks and Mr. Dry. The appraisal was generic, not as high as it should have been, not prepared in accordance with agency-established policies and procedures, did not include all of the tasks and work that Ms. Chapman performed during the rating period, and minimized her work performance and case work and contained negative comments that were not factual.

68. On or about March 18, 2009, Ms. Chapman submitted a formal rebuttal to Ms. Helm and Mr. Ng. explaining why her work warranted a higher rating and therefore, why the evaluation was retaliatory and discriminatory. Ms. Chapman stated in the rebuttal that she believed the evaluation was retaliation for filing an EEOC.

69. Ms. Chapman filed an EEO complaint regarding the events described in paragraphs 38-68. The agency issued a final agency decision on IRS-08-0727-F on or about April 19, 2010.

### EEO Complaint 4:    IRS-09-0547-F

70. On or about March 4, 2009, Ms. Helm told Ms. Chapman that she would not be given the

    appropriate means of transportation to conduct her case-related field travel.

71. From on or about February 2009 and continuing Ms. Helm publicly displayed

    information pertaining to Ms. Chapman's EEO complaints on her outlook calendar for

    other employees to see.

72. On or about March 5, 2009, Ms. Helm instructed Ms. Chapman to change, alter and

    falsify her travel voucher for the period October 14 - October 17, 2008 even though Ms.

    Helm was aware that the voucher had been pre-approved and was correctly filed by Ms.

    Chapman.   On or about March 9, 2009 Ms. Helm stated that she would pay the voucher

    in full if Ms. Chapman would change one of the charge codes. Two hours later, Ms.

    Chapman received an email from Mr. Dry stating that he was going to suspend her for 12

    days if she did not agree to acknowledge wrong and inappropriate behavior regarding her

    government credit card even though he was aware that she had been forced to open the

    credit card against agency policy and that his subordinate, Mr. Hicks, pre-approved all of

    the expenses.

73. On or about March 6, 2009, Ms. Helm and Mr. Dry issued Ms. Chapman an informal disciplinary Counseling Memorandum and accused her of unprofessional behavior during a meeting on March 4, 2009 with Ms. Helm and Mr. Dry.  During the meeting Ms. Helm attempted to discuss matters related to Ms. Chapman's EEO claims, harassed her, refused her request to have representation attend the meeting with her and accused Ms. Chapman of unprofessional behavior and conduct during the meeting.

74. On or about March 24, 2009 and continuing, Ms. Helm assigned Ms. Chapman limited and low priority work as a result of Ms. Helm's refusal to provide Ms. Chapman with the appropriate means of transportation.

75. On or about April 3, 2009, Ms. Chapman was interviewed for the position of IRA, Sr. CEP Team Coordinator, vacancy announcement #09PH4-LMB0261-0512-14-JC-IRA in Rochester, NY.  Ms. Chapman was not selected for this position even though she was just as qualified the person selected and had more seniority.

76. On or about April 7, 2009, Ms. Chapman requested that Ms. Helm provide her with a complete copy of all recordations, documents and information that management maintained in her employee files. From April 7, 2009 through June 6, 2009, Ms. Helm refused to provide this information and falsely claimed that she did not know what Ms. Chapman was asking for in an attempt to provoke and upset Ms. Chapman by forcing her

to make repeated requests for standard information. The information that Ms. Helm

finally provided contained all of the negative, false, discriminatory and retaliatory

allegations about Ms. Chapman's behavior and work by management officials that Ms.

Chapman had filed EEO complaints against.

77. On or about April 9 and 17, 2009, Lehman Dry again denied Ms. Chapman the

opportunity for advance level large case CIC work assignments when three openings

became available in her Baileys Crossroad post of duty. Mr. Dry assigned less qualified

agents with less seniority than Ms. Chapman to these three openings.

78. On or about April 13, 2009, Ms. Chapman received a Suspension Letter from Mr. Dry

that threatened to suspend Ms. Chapman for 12 days for matters related to her EEO

complaints and for alleged behavior during a March 4, 2009 meeting with Ms. Helm and

Mr. Dry and for which both Ms. Helm and Mr. Dry had already disciplined her when

they issued her a Counseling Memorandum on March 6, 2009.

79. On or about May 19, 2009, Ms. Chapman was again denied the opportunity to attend a

territory meeting in her Baileys Crossroads office with the rest of the LMSB RA in that

office but instead instructed to attend a meeting in a remote location in Maryland.

80. On or about June 18, 2009, Mr. Dry wrongfully suspended Ms. Chapman for three days

beginning July 6, 2009 for alleged rude and discourteous behavior on March 3, 2009 even

though he had already disciplined her for this same behavior on March 6, 2009, five

months prior, and advised her then that her alleged behavior did not warrant formal

disciplinary action.

81. On or about June 17, 2009, Ms. Helm directed Ms. Chapman to attend a meeting on June

23, 2009 but refused to tell Ms. Chapman the subject matter of the meeting so that Ms.

Chapman could prepare for the meeting and determine if she needed to secure

representation to accompany her to the meeting.

82. During the meeting on June 23, 2009, Ms. Chapman was harassed and treated in an

unprofessional, intimidating and threatening manner by Ms. Helm and Mr. Dry.  Ms.

Helm and Mr. Dry informed her that she would be subjected to different working

conditions than her coworkers.  The changes in working conditions included refusing to

provide or order her the work supplies requested and needed to perform her job, refusing

to allow her a reasonable amount of time to prepare and apply for internal job opportunity

vacancy announcements, refusing to provide her the appropriate means of transportation

to perform her job in accordance with established travel policy, refusing to provide her a

cell phone for necessary work related travel matters, intentionally prolonging the amount

of time it takes her to perform her case related field exam work, allowing her only a

limited amount of time for field travel and implying that she is to use her own time for

any additional time that is needed, requiring her to use her personally owned vehicle for government related travel, restricting and refusing to allow her to take accumulated sick leave and annual leave, suggesting that it was improper for her to advise upper management of retaliation that was occurring against her, advising her that they will not tell her the subject matter of any future meetings and denying her the right to take a work break.

83. When Ms. Chapman attempted to defend herself during the June 23, 2009 meeting, Ms. Helm refused to allow her to speak thereby intentionally provoking and upsetting Ms. Chapman until Ms. Chapman felt she had no choice but to call the police as she feared for her safety and well being. Ms. Chapman was advised by the police to leave the meeting.

84. Ms. Chapman filed an EEO complaint regarding the events described in paragraphs 70-83. The agency issued a final agency decision on IRS-09-0547-F on or about May 6, 2010.

### EEO COMPLAINT 5:       IRS-10-0174-F

85. Ms. Chapman was non-selected for the following positions in the Baileys Crossroad and Rochester, NY offices even though she was qualified for these positions. Ms. Chapman believes she was not selected in retaliation for her prior protected activities:

25

- April 9, 2009 Nonselection for Internal Revenue Agent Team Coordinator, Baileys Crossroad, VA 60-62-LMB9C259.

- June 23, 2009, Nonselection for Internal Revenue Agent Team Member, Baileys Crossroad, VA 60-00-LMB9317M, GS 13.

- June 23, 2009, Nonselection for Internal Revenue Agent International Examiner, Baileys Crossroad, VA 60-00-LMB9319B, GS 13.

- June 23, 2009, Nonselection for Internal Revenue Agent International Examiner, Rochester, NY 60-00-LMB9319P, GS 13.

- July 15, 2009, Nonselection for Internal Revenue Agent Financial Products, Rochester, NY 60-60-LMB9326E, GS 13.

- July 14, 2009, Nonselection for Internal Revenue Agent Sr. CEP, Baileys Crossroad, VA 09PH4-LMB0405-512-14AP.

- July 13, 2009, Nonselection for Internal Revenue Agent Sr. CEP, Baileys Crossroad, VA 09PH4-LMB0412-512-14A

- July 17, 2009 Nonselection for Internal Revenue Agent in Baileys Crossroad, 09PH1-CHB0437-0512-13-MH, GS-0512-13

- July 17, 2009 Nonselection for Internal Revenue Agent, in Baileys Crossroad, 09PH1-CH0409-0512-12/13-M, GS-0512-12

- July 17, 2009 Nonselection for Internal Revenue Agent, in Baileys Crossroad,
  09PH1-CH0410-0512-13-JF, GS-0512-13.

86. On 4/13/09, 5/28/09, 6/11/09, 6/17/09, 6/22/09, 6/23/09, 6/25/09, Ms. Helm issued Ms.
Chapman threatening Managerial Directives without any explanation. By issuing these
Managerial Directives, Ms. Helm was placing Ms. Chapman under scrutiny and
subjecting her to working conditions and standards that other revenue agents were not
being held to in an attempt to harass and intimidate her. In the Managerial Directives,
Ms. Helm states that if Ms. Chapman does not follow her directions she will be punished
to the point of removal.

87. Since February 2009, Ms. Chapman reported Ms. Helm's and Mr. Dry's continued
retaliatory and discriminatory behavior, and specifically communicated her concerns
regarding her safety and well being to upper management, Mr. Steven Miller and Mr.
Douglas Shulman; however they ignored her concerns and allowed these managers to put
her safety and well being in jeopardy on a daily basis since February 2009.

88. On or about May 2009, Ms. Chapman filed an EEO complaint regarding the events
described in paragraphs 85-87.     More than 180 days have passed since Ms. Chapman
filed this complaint.

**Termination**

27

89. On or about June 25, 2009, Mr. Dry issued Ms. Chapman a letter stating that he was going to remove her from the Service and her position based on her behavior during the June 23, 2009 meeting. In the letter he stated his reasons for making the decision. The reasons that he cited contained fabrications regarding Ms. Chapman's statements and conduct during the meeting.

90. On or about August 14, 2009, Ms. Chapman was terminated from her position and from the federal service. Ms. Chapman believes her termination was in retaliation for her prior protected activities.

91. Ms. Chapman filed a mixed-case appeal with the Merit Systems Protection Board. The administrative judge issued an initial decision in favor of the agency on or about March 29, 2010. Ms. Chapman's Petition for Review is pending.

### Count 1

92. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-91.

93. By and through its conduct, Defendant subjected Plaintiff to unlawful discrimination based on sex in violation of Title VII of the Civil Rights Act of 1964.

### Count 2

94. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-92.

95. By and through its conduct, Defendant discriminated against Plaintiff in reprisal for filing EEO complaints in violation of Title VII.

## JURY DEMAND

Plaintiff demands a trial by jury on each count in this Complaint.

WHEREFORE, Plaintiff demands judgment against Defendant on Counts 1 and 2, and seeks damages to be determined by a jury for lost wages, lost benefits, $300,000.00 compensatory damages for pain and suffering, mental anguish, emotional distress on each count, and in addition, Plaintiff demands costs and reasonable attorneys' fees.


Date: June 24, 2010                          RESPECTFULLY SUBMITTED,

                                             By: _____
                                             Alan Lescht, DC Bar #441691
                                             Susan L. Kruger, DC Bar # 414566
                                             ALAN LESCHT & ASSOCIATES, PC
                                             1050 17th Street, NW, Suite 400
                                             Washington, DC 20036
                                             T: 202.463.6036
                                             F: 202.463.6067
                                             Attorneys for Plaintiff